IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**COLUMBIA MUTUAL INSURANCE
COMPANY,** *et al.*                                                                                          **PLAINTIFFS**

v.                                          4:06CV01013-WRW

**ARKANSAS VALLEY REGIONAL INDUSTRIAL
DEVELOPMENT COMPANY LLC,** *et al.*                                                **DEFENDANTS**

**ORDER**

Pending is Defendants' Motion to Dismiss (Doc. No. 36). Plaintiffs have responded (Doc. No. 44). For the reasons set out below, Defendants' Motion is DENIED.

**I.    Background**[1]

The Arkansas Insurance Department permits certain insurance companies earning premium income in Arkansas to invest in the Arkansas Valley Regional Industrial Development Corporation ("Valley"), which allows them to offset a portion of their Arkansas premium taxes.[2] Valley is a regional industrial development company formed under, and governed by, the County and Regional Industrial Development Company Act.[3] Basically, in exchange for investment capital, Valley provides tax credits to its investors.

Valley was issued tax credits through the Arkansas State Bank Department ("ASBD"). In order to secure the tax credits, Valley submitted balance sheets to ASBD indicating that it had

---

[1]The facts in the background section are reproduced largely from a previous Order in this case, Docket No. 23.

[2]Doc. No. 23.

[3]*Id.*

1

an ownership interest in Natural Gas Solutions, LLC ("NGS"), as well as other companies.  In May, 2004, Defendants first contacted Plaintiffs about investing in tax credits.  Plaintiffs maintain that Defendants represented that the tax credits from NGS's business operations, and its related entities, were available for purchase.  After several months of discussions, "on October 29, 2004, Plaintiff entered into a Purchase Agreement with NGS Capital for the purchase of 387,500 Class C units of interest in NGS Capital for $329,375."[4]  Essentially, NGS "created" capital by exchanging $387,500 worth of tax credits for $329,375 cash.

During 2005, the ASBD initiated an investigation of the financial affairs of Valley.[5]  The Complaint states that ASBD discovered that "from December 1, 2003, through June 30, 2005, Valley's balance sheets, and other backup information provided to the ASBD, substantially overstated the value of its ownership in . . . five Investment Companies."[6]  Plaintiffs allege that Defendants "either knew, or should have known, of these material aspects of the underlying financial status of the Valley Investment Companies, on which the validity of the tax credits was based."[7]  According to a report on Valley by the Arkansas State Bank Commissioner, there was "serious doubt" whether Valley's transactions actually created eligible tax credits.[8]  In a letter dated June 23, 2006, Plaintiffs were informed by the Arkansas Insurance Commissioner that the tax credits they had purchased were denied.

---

[4]*Id*.

[5]*Id*.

[6]*Id*.

[7]*Id*.

[8]Doc. No. 23.

Plaintiffs filed this lawsuit alleging that Defendants' verbal and written misrepresentations led them to invest in tax credits that were ultimately worthless. The contract between NGS and Plaintiffs provided for the return of the tax credit purchase price if the tax credits were denied for any reason. Plaintiffs are suing for the return of the purchase price and damages under breach of contract, common law fraud, and alleged violations of federal and state securities laws.

Defendants filed a Motion to Dismiss under Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join necessary parties.[9] Defendants argue that the case should be dismissed unless the following individuals are joined: Robert Adcock, Jr., in his official capacity as Bank Commissioner for the State of Arkansas; Richard Weiss, in his official capacity as Director of the Arkansas Department of Finance and Administration ("ADFA"); and Julie Benafield Bowman, in her official capacity as Insurance Commissioner for the State of Arkansas.[10] Defendants assert that Robert Adcock, Bank Commissioner, should be joined because Plaintiffs rely on opinions contained in a Bank Department report as the basis of their fraud allegations.[11] Defendants maintain Richard Weiss, Director of the ADFA, should be joined because the ADFA will not honor the tax credits.[12] Defendants argue Julie Bowman, the Insurance Commissioner, should be joined because the Insurance Department "played an integral role in the issuing of the tax credits, Columbia's purchase of the tax credits, and then in pulling

---

[9] Doc. No. 37.

[10] *Id.*

[11] *Id.*

[12] *Id.*

the rug out from under Defendants by denying the tax credits."[13] Plaintiffs believe that the parties Defendants seek to join are not necessary parties.[14]

## III. DISCUSSION

Rule 12(b)(7) of the Federal Rules of Civil Procedure reads:

Every defense, in law or fact, to a claim for relief, in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (7) failure to join a party under Rule 19.[15]

In deciding a 12(b)(7) motion to dismiss for failure to join a party, it must first be determined if the party should have been joined under Rule 19.[16]

Rule 19 of the Federal Rules of Civil Procedure governs the required joinder of parties.[17] The first step in deciding if a person should be joined is to determine if a person is a necessary party under section (a) of Rule 19.[18] Rule 19(a) provides that a person whose joinder does not deprive the court of subject matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interesting relating to the subject of the action and is so situation that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise  inconsistent obligations because of the interest.[19]

---

[13]*Id.*

[14]Doc. No. 43.

[15]Fed. R. Civ. P. 12(b)(7).

[16]See *De Wit v. Firstar Corp.*, 879 F. Supp. 947, 991 (N.D. Iowa 1995).

[17]Fed. R. Civ. P. 19.

[18]*Gwartz v. Jefferson Mem'l. Hosp. Assn.*, 23 F.3d 1426, 1428 (8th Cir. 1994).

[19]Fed. R. Civ. P. 19. In connection with complete relief, the focus under is on relief between the existing parties, not on the possibility of litigation between a party and a non-party. *Gwartz v. Jefferson Mem'l. Hosp. Assn.*, 23 F.3d 1426, 1428 (8th Cir. 1994).

If a person is a necessary party, the next step is to determine if the person is indispensable under Rule 19(b).[20] If the person is not a necessary party, then the case can proceed without him and there is no need analyze if the person is indispensable.[21]

A. Complete Relief

Plaintiffs claim securities fraud under state and federal law, common law fraud, and breach of contract. Plaintiffs base their fraud claims on representations and omissions Defendants allegedly made about their holdings in various investment companies.[22] Plaintiffs base their breach of contract claim on Defendants not refunding the purchase price of the tax credits, despite language in the contract that a refund would be given if the tax credits were denied for any reason.[23] Each of Plaintiffs' claims arises out of actions taken directly by Defendants. Based on the record, it appears that complete relief among the existing parties can be achieved without the joinder Defendants request.

B. Interest in the Action

There is no evidence that any of the parties Defendants argue should be joined have an interest relating to the subject of the action -- the subject is of the action is Defendants' representations, omissions, and refusal to refund the purchase price. That Plaintiffs rely on a report from the Bank Department does not create a Bank Department interest in this action. That the ADFA will not honor the tax credits does not mean that department has an interest in Plaintiffs' fraud or breach of contract claims. Lastly, there is no evidence that the Insurance Department has an interest in Plaintiffs' claims.  Because those parties apparently do not have an interest in the claim, there is no question as to whether proceeding in those parties' absence

---

[20]See *Gwartz*, 23 F.3d at 1428.

[21]*Id.*

[22]Doc. No. 2.

[23]*Id.*

would impair or impede their ability to protect that interest. Further, there does not appear to be a substantial risk of Defendants incurring double, multiple, or otherwise inconsistent obligations in connection with this litigation.

## IV. CONCLUSION

Complete relief can be achieved among the existing parties, and the parties that Defendants urge should be joined do not appear to have an interest in the subject of the action. Thus, the parties Defendants seek to join are not necessary parties. Because the parties are not necessary parties, there is no need to determine if the parties are indispensable. Since the parties are not necessary under Rule 19, Defendants' Rule 12(b)(7) motion to dismiss for failure to join necessary parties fails. Accordingly, the Motion is DENIED.

IT IS SO ORDERED this 18th day of March, 2008.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE